FILED

2025 Dec-08 AM 08:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

**BRENTON RHODES, BRANDON BURGESS, BRYANT SMITH, CHRISTIAN EDWARDS, CHRISTOPHER JOYE, CHRISTOPHER RAMSEY, CODY WHITE, DALE DOWDY, GAGE TOLTON, JACOB STEWART, JALON JONES, JAMES LEDFORD, JAMES "EDDIE" RICHARDSON, JEFFREY BASS, JEREMIAH JOHNSON, JONATHAN MARTIN, JORDAN FIELDING, JOSHUA BRADLEY, KENNETH HOWARD, KEVIN BAILEY, LUKE HALL, MATTHEW RODGERS, MICHAEL SEDLACEK, MITCHELL SOWERS, PETE MEHOK III, PETER PUCCIARELLI, RICHARD ENNIS, RUSS KENNINGTON, SCOTT ADAMS, STEPHEN LONG, STEVEN CHOP, AND STEVEN PERRY,**

      **PLAINTIFFS,**

**VS.**

**THE CITY OF MADISON,**

      **DEFENDANT.**

**CV NO.: TBD**

## COMPLAINT

## I.  JURISDICTION

1.  This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201, 2202 and 42 U.S.C. § 1983.  This is a suit authorized and instituted pursuant to 42 U.S.C. § 1983, which allows for civil action to recover

for the deprivation of a legal property interest in the terms and conditions of the Plaintiffs' employment. The Plaintiffs' legal property interest as relevant to this Complaint arises from City of Madison Ordinance 2024-241.

2.     The Plaintiffs invoke supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367. The supplemental jurisdiction of this Court is invoked pursuant to Ala. Code § 12-11-30, as the claims arise under the civil service laws of the State of Alabama. Jurisdiction is proper because the Plaintiffs assert claims under City of Madison Ordinance 2024-241. Pursuant to 28 U.S.C. § 1367 and Ala. Code § 11-45-1, this Court has jurisdiction to enforce Ordinance 2024-241.

3.     The Plaintiffs exhausted all administrative remedies prior to filing this action, including providing notice to Defendant pursuant to Alabama Code §§ 11-47-23 and 11-47-192.

## II.   Parties

4.     At all times relevant to this Complaint, the Plaintiffs Brenton Rhodes (hereinafter "Plaintiffs") have been residents of Alabama, and have performed labor for the Defendant in Madison County. Thus, pursuant to Ala. Code 6-3-2 venue for this action lies with the Northern District of Alabama's Northeastern Division.

5.     The City of Madison (hereinafter "Defendant" or "The City") is a municipality within the State of Alabama. The City adopted Ordinance 2024-241, which applies to all City employees working within the City of Madison Alabama.

### III.    Statement of Facts

6.    The City maintains four (4) types of employees, which are classified into the following departments: "(1) Sworn Police Officers, (2) Certified Firefighter Personnel, (3) General, Including All Other Classified City Employees; and (4) Department Heads and Aides."

7.    To ensure that employees are compensated in a uniform manner, the City has implemented Section 12 of the City's Personnel Policies and Procedures and a Pay Scale for each of the four departments described in Paragraph 5.

8.    Section 12 of the City's Personnel Policies and Procedures establishes the method for classifying employees on the City's Pay Scales, the method for progressing employees under the City's Pay Scales, and the benefits that each employee is entitled to.

9.    Under Section 12 of the City's Personnel Policies and Procedures every position in the department is assigned a Grade.

10.    As relevant to this Complaint, the City's Fire Department maintains five (5) Grades: FD2 (Firefighter), FD3 (Fire Truck Driver), FD4 (Fire Captain), FD5 (Fire Battalion Chief), and FD6 (Fire Chief).

11.    The City's Fire Department hires all new employees at an FD2 Grade (Firefighter).

12.     After demonstrating sufficient skill and expertise, the City selects employees to undergo a test to potentially receive a promotion to the next Grade on the pay plan – for example FD2s have the opportunity to become FD3s and FD4s have the opportunity to become FD5.

13.     To ensure all employees are compensated fairly based on their relevant experience and performance while employed, the City has broken each Grade into twenty-one (21) progressive Steps that an employee can be classified at.

14.     Each employee's rate of pay is determined by their assigned Grade and Step.

15.     Over the last few decades, the City occasionally deviated from the established classification policies of Section 12 of the City's Personnel Policies and Procedures.

16.     During the 2024 Fiscal Year, the City retained the services of Evergreen Solutions to assess the pay classifications of its employees.

17.     As relevant to this Complaint, Evergreen found that with respect to individual classifications there were "several instances of wage compression based on years in current classification and overall years of service to the City" (i.e. employees assigned to the same Grade for shorter periods of time often made the

same or more than employees who had been in the Grade and with the City for significantly more time).[1]

18.     As relevant to this Complaint, Evergreen found that employees were not paid a market competitive rate when compared to other cities in Alabama.

19.     Evergreen recommended that the City implement several changes to its pay policies, pay classifications, and pay scales.

20.     On September 9, 2024, the City adopted Ordinance 2024-241.

21.     The purpose of Ordinance 2024-241 was to amend Section 12 of the City's Personnel Policies and Procedures to incorporate Evergreen's recommendations "to provide for market-competitive compensation and to reduce pay compression within the City", to revise its pay scales "as articulated in the Evergreen Policy Recommendations", and to "update employees' salaries for the [2025] fiscal year according to the classifications . . . that Evergreen has recommended for each position . . ."

22.     Ordinance 2024-241 approved amendments to Section 12 of the City's Personnel Policies and Procedures through Attachment A.

---

[1]Wage compression "occurs when there's little difference in pay between employees regardless of differences in their respective knowledge, skills, experience or abilities. When it occurs, it can be found between: [1] Tenured employees and new hires (when new hires join the company at compensation levels similar to long-time employees) [2] Managers and their direct reports (when there are small wage differences between employees within the same job family at an organization)" https://www.insperity.com/blog/pay-compression/ (last accessed September 25, 2025).

23.     Under the revisions of Section 12 of the City's Personnel Policies and Procedures, employees typically start their Step classification at Step 1, unless they have a requisite number of continuous years with paid professional firefighter experience before working with the City.

24.     Under the revisions of Section 12 of the City's Personnel Policies and Procedures, employees "who receive overall satisfactory performance ratings during a given year shall receive a one-step increase . . .."

25.     Under the revisions of Section 12 of the City's Personnel Policies and Procedures, employees maintain their Step classification when being promoted.

26.     When reclassifying employees pursuant to the revised Section 12 of the City's Personnel Policies and the recommendations of Evergreen, it promised to use "a methodology [designed] to place employees into their new, market competitive pay ranges, **and to reduce wage compression[2] based on years of service in their current roles and prior City roles."** (City of Madison Ordinance 2024-241: Evergreen Recommendation 3, bullet point 5; adopted by Section 1)(emphasis added).

27.     To fulfill its promise under Ordinance 2024-241, the City was required to reclassify the Plaintiffs using the following methodology: Appropriate Starting

---

[2] *See* fn 1.

Step + Steps for Professional Experience in Role + Years Meeting Expectations, to a Maximum Step of 21.

28.     Under the revisions of Section 12 of the City's Personnel Policies and Procedures, employees' professional firefighter experience entitles them to a higher Step as follows:

| Full Years of Continuous Service | Step Increase |
| --- | --- |
| "3 Years, But Less than 5" | +1 |
| "5 Years, But Less than 7" | +2 |
| "More than 7 Years" | +3 |

29.     When the City implemented Ordinance 2024-241, it did not classify the Plaintiffs in a manner that took into account their Appropriate Starting Step, their Professional Experience in their current role, and their Years Meeting Expectations.

30.     Ordinance 2024-241 authorized an appeal process "to address any perceived or actual inaccuracies in [the City's] compensation study results." (City of Madison Ordinance 2024-241, Section 6).

31.     Under the City's appeal process, each employee desiring to appeal their reclassification were required to submit a written appeal within ten (10) business days of written notice of their reclassification.  (City of Madison Ordinance 2024-241 Att. B, Sect. E., 1.).

32.    As required by the City, the Plaintiffs appealed their reclassification during the appropriate time period.

33.    Under the City's appeal process, each Department Head was required to provide a written statement to the City's Human Resources Director with their reasons for agreement, disagreement, or modification of the employee's appeal request.  (City of Madison Ordinance 2024-241 Att. B, Sect. E., 2.).

34.    As relevant to this Complaint, the Department Head of the City's Fire Department was David Bailey.

35.    Under the City's appeal process, the Human Resources Director was required to consult with Evergreen and provide the City's Mayor with recommendations to agree, disagree, or modify the Department Head's recommendations.  (City of Madison Ordinance 2024-241 Att. B, Sect. E., 3.).

36.    As relevant to this Complaint, the City's Human Resources Director was Megan Zingarelli.

37.    Under the City's appeal process, the Mayor was required to review the recommendations and make a final decision on each employee's appeal.  (City of Madison Ordinance 2024-241 Att. B, Sect. E., 4.).

38.    As relevant to this Complaint, the Mayor was Paul Finley.

39.    When the Mayor made his final decision on the Plaintiff's appeal, the City did not reclassify the Plaintiffs to their appropriate Steps.

40.     On December 9, 2024, the City implemented a new pay plan for the Fire Department, which is currently in effect. (Exhibit 1).

41.     Any backpay damages that the Plaintiffs may be entitled to begin accruing once the City communicated its final decision regarding the employee's appeal. (City of Madison Ordinance 2024-241 Att. B, Sect. G.)

## IV.    COUNT ONE – 42 U.S.C. § 1983 – Deprivation of Employment Rights Prescribed by City of Madison Ordinance 2024-241

42.     Plaintiffs hereby incorporate by reference each of the allegations contained in paragraphs 1 through 41 above.

43.     On September 9, 2024, the City adopted Ordinance 2024-241.

44.     On October 14, 2024, Ordinance 2024-241 became effective.

45.     Ordinance 2024-241 incorporated an amended version of Section 12 of the City's Personnel Policies and Procedures.

46.     Ordinance 2024-241 incorporated a formal appeal process between the Plaintiffs and the City.

47.     On December 9, 2024, the City implemented a new pay plan for the Fire Department, which is currently in effect. (Exhibit 1).

48.     By adopting Ordinance 2024-241 and implementing the December 2024 pay plan, the City created a legal property interest for the Plaintiffs to have their pay reclassified in a manner consistent with Ordinance 2024-241, including Attachment A, and the December 2024 pay plan.

49.    By incorporating Attachment B into Ordinance 2024-241, the City created a procedural due process of law to follow when it received appeals in response to the October 2024 reclassification.

50.    As a result of the following actions, the Plaintiff's Due Process rights have been violated, resulting in lost wages:

### *Brenton Rhodes*

51.    The City notified Rhodes that when it implemented its reclassification on October 14, 2025, it would classify him as Step 8.

52.    When the City hired him, Rhodes had one (1) full year of continuous paid professional firefighter experience.

53.    Based on his prior professional firefighting experience, Rhodes was not entitled to have his Starting Step increased.

54.    Based on his prior professional firefighting experience, Rhodes's Appropriate Starting Step was Step 1

55.    The City hired Rhodes to work in its Fire Department, on or about April 7, 2008.

56.    At the time the City implemented its reclassification, it had employed Rhodes for sixteen (16) full years.

57.    Throughout his employment, Rhodes generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

58.    During his employment, the City has not notified Rhodes that he failed to meet expectations.

59.    Based on his Years Meeting Expectations, Rhodes was entitled to have his Starting Step increased by sixteen (16).

60.    At the time the City implemented its reclassification, Rhodes had held his role of FD4 - Fire Captain for five (5) full years.

61.    Based on his Professional Experience in Role, Rhodes was entitled to have his Step further increased by two (2) to reduce wage compression.

62.    To fulfill its promises under Ordinance 2024-241, the City was due to classify Rhodes at Step 19.  (Appropriate Starting Step (1) + Professional Experience in Role (2) + Years Meeting Expectations (16)).

63.    Rhodes appealed his reclassification during the time period required by the City's appeal process.

64.    In response to his appeal, the City did not increase Rhodes's Step.

65.    Since his appeal, the City has not further changed Rhodes's classification.

66.    The City currently classifies Rhodes as FD4 - Fire Captain, Step 8

67.     FD4 - Fire Captain, Step 8 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,026.54.

68.     FD4 - Fire Captain, Step 19 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,971.08.

69.     As a result of the City's actions, Rhodes has been damaged, suffering lost wages.

70.     Rhodes damages are currently estimated to be growing by $944.54 on a bi-weekly basis.

### *Brandon Burgess*

71.     The City notified Burgess that when it implemented its reclassification on October 14, 2025, it would classify him as Step 12.

72.     When the City hired him, Burgess had no continuous paid professional firefighter experience.

73.     Based on his prior professional firefighting experience, Burgess was not entitled to have his Starting Step increased.

74.     Based on his prior professional firefighting experience, Burgess's Appropriate Starting Step was Step 1

75.     The City hired Burgess to work in its Fire Department, on or about March 18, 2003.

76.    At the time the City implemented its reclassification, it had employed Burgess for twenty-one (21) full years.

77.    Throughout his employment, Burgess generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

78.    During his employment, the City has not notified Burgess that he failed to meet expectations.

79.    Based on his Years Meeting Expectations, Burgess was entitled to have his Starting Step increased by twenty-one (21).

80.    At the time the City implemented its reclassification, Burgess had held his role of FD4 - Fire Captain for three (3) full years.

81.    Based on his Professional Experience in Role, Burgess was entitled to have his Step further increased by one (1) to reduce wage compression.

82.    To fulfill its promises under Ordinance 2024-241, the City was due to classify Burgess at the City's Maximum Step of 21.  (Appropriate Starting Step (1) + Professional Experience in Role (1) + Years Meeting Expectations (21)).

83.    Burgess appealed his reclassification during the time period required by the City's appeal process.

84.    In response to his appeal, the City did not increase Burgess's Step.

85.    Since his appeal, the City has not changed Burgess's classification.

86.     The City currently classifies Burgess as FD4 - Fire Captain, Step 12

87.     FD4 - Fire Captain, Step 12 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,340.73.

88.     FD4 - Fire Captain, Step 21 of the Fire Department's pay scale has an estimated bi-weekly salary of $4,172.11.

89.     As a result of the City's actions, Burgess has been damaged, suffering lost wages.

*90.*     Burgess damages are currently estimated to be growing by $831.38 on a bi-weekly basis.

### *Bryant Smith*

91.     The City notified Smith that when it implemented its reclassification on October 14, 2025, it would classify him as Step 8.

92.     When the City hired him, Smith had no continuous paid professional firefighter experience.

93.     Based on his prior professional firefighting experience, Smith was not entitled to have his Starting Step increased.

94.     Based on his prior professional firefighting experience, Smith's Appropriate Starting Step was Step 1

95.     The City hired Smith to work in its Fire Department, on or about January 13, 2014.

96.    At the time the City implemented its reclassification, it had employed Smith for ten (10) full years.

97.    Throughout his employment, Smith generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

98.    During his employment, the City has not notified Smith that he failed to meet expectations.

99.    Based on his Years Meeting Expectations, Smith was entitled to have his Starting Step increased by ten (10).

100.    At the time the City implemented its reclassification, Smith had held his role of FD3 - Fire Truck Driver for three (3) full years.

101.    Based on his Professional Experience in Role, Smith was entitled to have his Step further increased by one (1) to reduce wage compression.

102.    To fulfill its promises under Ordinance 2024-241, the City was due to classify Smith at Step 12.  (Appropriate Starting Step (1) + Professional Experience in Role (1) + Years Meeting Expectations (10)).

103.    Smith appealed his reclassification during the time period required by the City's appeal process.

104.    In response to his appeal, the City did not increase Smith's Step.

105.    Since his appeal, the City has not changed Smith's classification.

106.   The City currently classifies Smith as FD3 - Fire Truck Driver, Step 8

107.   FD3 - Fire Truck Driver, Step 8 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,581.22.

108.   FD3 - Fire Truck Driver, Step 12 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,849.19.

109.   As a result of the City's actions, Smith has been damaged, suffering lost wages.

110.   Smith's damages are currently estimated to be growing by $267.97 on a bi-weekly basis.

### Christian Edwards

111.   The City notified Edwards that when it implemented its reclassification on October 14, 2025, it would classify him as Step 2.

112.   When the City hired him, Edwards had three (3) full years of continuous paid professional firefighter experience.

113.   Based on his prior professional firefighting experience, Edwards was entitled to have his Starting Step increased by 1.

114.   Based on his prior professional firefighting experience, Edwards's Appropriate Starting Step was Step 2

115.   The City hired Edwards to work in its Fire Department, on or about August 20, 2022.

116.    At the time the City implemented its reclassification, it had employed Edwards for two (2) full years.

117.    Throughout his employment, Edwards generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

118.    During his employment, the City has not notified Edwards that he failed to meet expectations.

119.    Based on his Years Meeting Expectations, Edwards was entitled to have his Starting Step increased by two (2).

120.    At the time the City implemented its reclassification, Edwards had no professional experience with the City beyond his experience in FD2 - Firefighter.[3]

121.    Based on his Professional Experience in Role, Edwards was not entitled to have his Step further increased to reduce wage compression.

122.    To fulfill its promises under Ordinance 2024-241, the City was due to classify Edwards at Step 4.  (Appropriate Starting Step (2) + Professional Experience in Role (0) + Years Meeting Expectations (2)).

123.    Edwards appealed his reclassification during the time period required by the City's appeal process.

---

[3] Plaintiffs acknowledge that any wage compression between FD2-Firefighter's are readily addressed by adding their Years Meeting Expectations to their Appropriate Starting Step and that they are not entitled to any additional Steps for their years in the role.

124.   In response to his appeal, the City did not increase Edwards's Step.

125.   Since his appeal, the City has not changed Edwards's classification.

126.   The City currently classifies Edwards as FD2 - Firefighter, Step 2

127.   FD2 - Firefighter, Step 2 of the Fire Department's pay scale has an estimated bi-weekly salary of $1,952.44.

128.   FD2 - Firefighter, Step 4 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,051.28.

129.   As a result of the City's actions, Edwards has been damaged, suffering lost wages.

130.   Edwards damages are currently estimated to be growing by $98.84 on a bi-weekly basis.

### *Christopher Joye*

131.   The City notified Joye that when it implemented its reclassification on October 14, 2025, it would classify him as Step 9.

132.   When the City hired him, Joye had no continuous paid professional firefighter experience.

133.   Based on his prior professional firefighting experience, Joye was not entitled to have his Starting Step increased.

134.   Based on his prior professional firefighting experience, Joye's Appropriate Starting Step was Step 1

135.    The City hired Joye to work in its Fire Department, on or about January 5, 2015.

136.    At the time the City implemented its reclassification, it had employed Joye for nine (9) full years.

137.    Throughout his employment, Joye generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

138.    During his employment, the City has not notified Joye that he failed to meet expectations.

139.    Based on his Years Meeting Expectations, Joye was entitled to have his Starting Step increased by nine (9).

140.    At the time the City implemented its reclassification, Joye had held his role of FD3 - Fire Truck Driver for less than (1) full year.

141.    Based on his Professional Experience in Role, Joye was not entitled to have his Step further increased to reduce wage compression.

142.    To fulfill its promises under Ordinance 2024-241, the City was due to classify Joye at Step 10.  (Appropriate Starting Step (1) + Professional Experience in Role (0) + Years Meeting Expectations (9)).

143.    Joye appealed his reclassification during the time period required by the City's appeal process.

144.   In response to his appeal, the City did not increase Joye's Step.

145.   Since his appeal, the City has not changed Joye's classification.

146.   The City currently classifies Joye as FD3 - Fire Truck Driver, Step 9

147.   FD3 - Fire Truck Driver, Step 9 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,645.76.

148.   FD3 - Fire Truck Driver, Step 10 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,711.90.

149.   As a result of the City's actions, Joye has been damaged, suffering lost wages.

150.   Joye damages are currently estimated to be growing by $66.14 on a bi-weekly basis.

### Christopher Ramsey

151.   The City notified Ramsey that when it implemented its reclassification on October 14, 2025, it would classify him as Step 8.

152.   When the City hired him, Ramsey had no continuous paid professional firefighter experience.

153.   Based on his prior professional firefighting experience, Ramsey was not entitled to have his Starting Step increased.

154.   Based on his prior professional firefighting experience, Ramsey's Appropriate Starting Step was Step 1

155.   The City hired Ramsey to work in its Fire Department, on or about April 7, 2008.

156.   At the time the City implemented its reclassification, it had employed Ramsey for sixteen (16) full years.

157.   Throughout his employment, Ramsey generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

158.   During his employment, the City has not notified Ramsey that he failed to meet expectations.

159.   Based on his Years Meeting Expectations, Ramsey was entitled to have his Starting Step increased by sixteen (16).

160.   At the time the City implemented its reclassification, Ramsey had held his role of FD4 - Fire Captain for three (3) full years.

161.   Based on his Professional Experience in Role, Ramsey was entitled to have his Step further increased by one (1) to reduce wage compression.

162.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Ramsey at Step 18.   (Appropriate Starting Step (1) + Professional Experience in Role (1) + Years Meeting Expectations (16)).

163.   Ramsey appealed his reclassification during the time period required by the City's appeal process.

164.   In response to his appeal, the City did not increase Ramsey's Step.

165.   Since his appeal, the City has not changed Ramsey's classification.

166.   The City currently classifies Ramsey as FD4 - Fire Captain, Step 8

167.   FD4 - Fire Captain, Step 8 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,026.54.

168.   FD4 - Fire Captain, Step 18 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,874.22.

169.   As a result of the City's actions, Ramsey has been damaged, suffering lost wages.

170.   Ramsey damages are currently estimated to be growing by $847.68 on a bi-weekly basis.

### *Cody White*

171.   The City notified White that when it implemented its reclassification on October 14, 2025, it would classify him as Step 6.

172.   When the City hired him, White had no continuous paid professional firefighter experience.

173.   Based on his prior professional firefighting experience, White was not entitled to have his Starting Step increased.

174.   Based on his prior professional firefighting experience, White's Appropriate Starting Step was Step 1

175.    The City hired White to work in its Fire Department, on or about February 12, 2018.

176.    At the time the City implemented its reclassification, it had employed White for six (6) full years.

177.    Throughout his employment, White generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

178.    During his employment, the City has not notified White that he failed to meet expectations.

179.    Based on his Years Meeting Expectations, White was entitled to have his Starting Step increased by six (6).

180.    At the time the City implemented its reclassification, White had held his role of FD3 - Fire Truck Driver for one (1) full year.

181.    Based on his Professional Experience in Role, White was not entitled to have his Step further increased to reduce wage compression.

182.    To fulfill its promises under Ordinance 2024-241, the City was due to classify White at Step 7. (Appropriate Starting Step (1) + Professional Experience in Role (0) + Years Meeting Expectations (6)).

183.    White appealed his reclassification during the time period required by the City's appeal process.

184.    In response to his appeal, the City did not increase White's Step.

185.    Since his appeal, the City has not changed White's classification.

186.    The City currently classifies White as FD3 - Fire Truck Driver, Step 6

187.    FD3 - Fire Truck Driver, Step 6 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,456.85.

188.    FD3 - Fire Truck Driver, Step 7 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,518.27.

189.    As a result of the City's actions, White has been damaged, suffering lost wages.

190.    White damages are currently estimated to be growing by $61.42 on a bi-weekly basis.

### *Dale Dowdy*

191.    The City notified Dowdy that when it implemented its reclassification on October 14, 2025, it would classify him as Step 9.

192.    When the City hired him, Dowdy had no continuous paid professional firefighter experience.

193.    Based on his prior professional firefighting experience, Dowdy was not entitled to have his Starting Step increased.

194.    Based on his prior professional firefighting experience, Dowdy's Appropriate Starting Step was Step 1

195.   The City hired Dowdy to work in its Fire Department, on or about July 5, 2006.

196.   At the time the City implemented its reclassification, it had employed Dowdy for eighteen (18) full years.

197.   Throughout his employment, Dowdy generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

198.   During his employment, the City has not notified Dowdy that he failed to meet expectations.

199.   Based on his Years Meeting Expectations, Dowdy was entitled to have his Starting Step increased by eighteen (18).

200.   At the time the City implemented its reclassification, Dowdy had held his role of FD3 - Fire Truck Driver for fourteen (14) full years.

201.   Based on his Professional Experience in Role, Dowdy was entitled to have his Step further increased by three (3) to reduce wage compression.

202.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Dowdy at the City's Maximum Step of 21.  (Appropriate Starting Step (1) + Professional Experience in Role (3) + Years Meeting Expectations (18)).

203.   Dowdy appealed his reclassification during the time period required by the City's appeal process.

204.   In response to his appeal, the City did not increase Dowdy's Step.

205.   Since his appeal, the City has not changed Dowdy's classification.

206.   The City currently classifies Dowdy as FD3 - Fire Truck Driver, Step 9.

207.   FD3 - Fire Truck Driver, Step 9 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,645.76.

208.   FD3 - Fire Truck Driver, Step 21 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,558.25.

209.   As a result of the City's actions, Dowdy has been damaged, suffering lost wages.

210.   Dowdy damages are currently estimated to be growing by $912.49 on a bi-weekly basis.

### *Gage Tolton*

211.   The City notified Tolton that when it implemented its reclassification on October 14, 2025, it would classify him as Step 8.

212.   When the City hired him, Tolton had no continuous paid professional firefighter experience.

213.   Based on his prior professional firefighting experience, Tolton was not entitled to have his Starting Step increased.

214.   Based on his prior professional firefighting experience, Tolton's Appropriate Starting Step was Step 1

215.   The City hired Tolton to work in its Fire Department, on or about August 18, 2014.

216.   At the time the City implemented its reclassification, it had employed Tolton for ten (10) full years.

217.   Throughout his employment, Tolton generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

218.   During his employment, the City has not notified Tolton that he failed to meet expectations.

219.   Based on his Years Meeting Expectations, Tolton was entitled to have his Starting Step increased by ten (10).

220.   At the time the City implemented its reclassification, Tolton had held his role of FD3 - Fire Truck Driver for one (1) full year.

221.   Based on his Professional Experience in Role, Tolton was not entitled to have his Step further increased to reduce wage compression.

222.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Tolton at Step 11.  (Appropriate Starting Step (1) + Professional Experience in Role (0) + Years Meeting Expectations (10)).

223.   Tolton appealed his reclassification during the time period required by the City's appeal process.

224.   In response to his appeal, the City did not increase Tolton's Step.

225.   Since his appeal, the City has further changed Tolton's classification based on his overall performance and qualifications.

226.   The City currently classifies Tolton as FD4 - Fire Captain, Step 8

227.   FD4 - Fire Captain, Step 8 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,026.54.

228.   FD4 - Fire Captain, Step 11 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,259.25.

229.   As a result of the City's actions, Tolton has been damaged, suffering lost wages.

230.   Tolton damages are currently estimated to be growing by $232.71 on a bi-weekly basis.

### *Jacob Stewart*

231.   The City notified Stewart that when it implemented its reclassification on October 14, 2025, it would classify him as Step 8.

232.   When the City hired him, Stewart had no continuous paid professional firefighter experience.

233.   Based on his prior professional firefighting experience, Stewart was not entitled to have his Starting Step increased.

234.   Based on his prior professional firefighting experience, Stewart's Appropriate Starting Step was Step 1

235.   The City hired Stewart to work in its Fire Department on or about June 25, 2012.

236.   At the time the City implemented its reclassification, it had employed Stewart for twelve (12) full years.

237.   Throughout his employment, Stewart generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

238.   During his employment, the City has not notified Stewart that he failed to meet expectations.

239.   Based on his Years Meeting Expectations, Stewart was entitled to have his Starting Step increased by twelve (12).

240.   At the time the City implemented its reclassification, Stewart had held his role of FD3 - Fire Truck Driver for three (3) full years.

241.   Based on his Professional Experience in Role, Stewart was entitled to have his Step further increased by one (1) to reduce wage compression.

242.  To fulfill its promises under Ordinance 2024-241, the City was due to classify Stewart at Step 14.  (Appropriate Starting Step (1) + Professional Experience in Role (1) + Years Meeting Expectations (12)).

243.  Stewart appealed his reclassification during the time period required by the City's appeal process.

244.  In response to his appeal, the City did not increase Stewart's Step.

245.  Since his appeal, the City has not changed Stewart's classification.

246.  The City currently classifies Stewart as FD3 - Fire Truck Driver, Step 8.

247.  FD3 - Fire Truck Driver, Step 8 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,581.22.

248.  FD3 - Fire Truck Driver, Step 14 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,993.43.

249.  As a result of the City's actions, Stewart has been damaged, suffering lost wages.

250.  Stewart damages are currently estimated to be growing by $412.21 on a bi-weekly basis.

### *Jalon Jones*

251.  The City notified Jones that when it implemented its reclassification on October 14, 2025, it would classify him as Step 2.

252.   When the City hired him, Jones had no continuous paid professional firefighter experience.

253.   Based on his prior professional firefighting experience, Jones was not entitled to have his Starting Step increased.

254.   Based on his prior professional firefighting experience, Jones's Appropriate Starting Step was Step 1

255.   The City hired Jones to work in its Fire Department, on or about August 22, 2022.

256.   At the time the City implemented its reclassification, it had employed Jones for two (2) full years.

257.   Throughout his employment, Jones generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

258.   During his employment, the City has not notified Jones that he failed to meet expectations.

259.   Based on his Years Meeting Expectations, Jones was entitled to have his Starting Step increased by two (2).

260.   At the time the City implemented its reclassification, Jones had no professional experience with the City beyond his experience in FD2 - Firefighter.

261.   Based on his Professional Experience in Role, Jones was not entitled to have his Step further increased to reduce wage compression.

262.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Jones at Step 3.  (Appropriate Starting Step (1) + Professional Experience in Role (0) + Years Meeting Expectations (2)).

263.   Jones appealed his reclassification during the time period required by the City's appeal process.

264.   In response to his appeal, the City did not increase Jones's Step.

265.   Since his appeal, the City has not changed Jones's classification.

266.   The City currently classifies Jones as FD2 - Firefighter, Step 2

267.   FD2 - Firefighter, Step 2 of the Fire Department's pay scale has an estimated bi-weekly salary of $1,952.44.

268.   FD2 - Firefighter, Step 3 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,001.25.

269.   As a result of the City's actions, Jones has been damaged, suffering lost wages.

270.   Jones damages are currently estimated to be growing by $48.81 on a bi-weekly basis.

*James Ledford*

271.   The City notified Ledford that when it implemented its reclassification on October 14, 2025, it would classify him as Step 8.

272.   When the City hired him, Ledford had one (1) full year of continuous paid professional firefighter experience.

273.   Based on his prior professional firefighting experience, Ledford was not entitled to have his Starting Step increased.

274.   Based on his prior professional firefighting experience, Ledford's Appropriate Starting Step was Step 1

275.   The City hired Ledford to work in its Fire Department, on or about August 17, 2015.

276.   At the time the City implemented its reclassification, it had employed Ledford for nine (9) full years.

277.   Throughout his employment, Ledford generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

278.   During his employment, the City has not notified Ledford that he failed to meet expectations.

279.   Based on his Years Meeting Expectations, Ledford was entitled to have his Starting Step increased by nine (9).

280.    At the time the City implemented its reclassification, Ledford had held his role of FD3 - Fire Truck Driver for less than (1) full year.

281.    Based on his Professional Experience in Role, Ledford was not entitled to have his Step further increased to reduce wage compression.

282.    To fulfill its promises under Ordinance 2024-241, the City was due to classify Ledford at Step 10.    (Appropriate Starting Step (1) + Professional Experience in Role (0) + Years Meeting Expectations (9)).

283.    Ledford appealed his reclassification during the time period required by the City's appeal process.

284.    In response to his appeal, the City did not increase Ledford's Step.

285.    Since his appeal, the City has changed Ledford's classification based on his overall performance and qualifications.

286.    The City currently classifies Ledford as FD4 - Fire Captain, Step 8

287.    FD4 - Fire Captain, Step 8 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,026.54.

288.    FD4 - Fire Captain, Step 10 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,179.75.

289.    As a result of the City's actions, Ledford has been damaged, suffering lost wages.

290.   Ledford damages are currently estimated to be growing by $153.21 on a bi-weekly basis.

### James "Eddie" Richardson

291.   The City notified Richardson that when it implemented its reclassification on October 14, 2025, it would classify him as Step 13.

292.   When the City hired him, Richardson had no continuously paid professional firefighter experience.

293.   Based on his prior professional firefighting experience, Richardson was not entitled to have his Starting Step increased.

294.   Based on his prior professional firefighting experience, Richardson's Appropriate Starting Step was Step 1.

295.   The City hired Richardson to work in its Fire Department on or about February 17, 2003.

296.   At the time the City implemented its reclassification, it had employed Richardson for twenty-one (21) full years.

297.   Throughout his employment, Richardson generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

298.   During his employment, the City has not notified Richardson that he failed to meet expectations.

299.   Based on his Years Meeting Expectations, Richardson was entitled to have his Starting Step increased by twenty-one (21).

300.   At the time the City implemented its reclassification, Richardson had held his role of FD4 - Fire Captain for six (6) full years.

301.   Based on his Professional Experience in Role, Richardson was entitled to have his Step further increased by two (2) to reduce wage compression.

302.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Richardson at the City's Maximum Step of 21.  (Appropriate Starting Step (1) + Professional Experience in Role (2) + Years Meeting Expectations (21)).

303.   Richardson appealed his reclassification during the time period required by the City's appeal process.

304.   In response to his appeal, the City did not increase Richardson's Step.

305.   Since his appeal, the City has not changed Richardson's classification.

306.   The City currently classifies Richardson as FD4 - Fire Captain, Step 13

307.   FD4 - Fire Captain, Step 13 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,424.25.

308.   FD4 - Fire Captain, Step 21 of the Fire Department's pay scale has an estimated bi-weekly salary of $4,172.11.

309.   As a result of the City's actions, Richardson has been damaged, suffering lost wages.

310.    Richardson damages are currently estimated to be growing by $747.86 on a bi-weekly basis.

### Jeffrey Bass

311.    The City notified Bass that when it implemented its reclassification on October 14, 2025, it would classify him as Step 11.

312.    When the City hired him, Bass had five (5) full years of continuous paid professional firefighter experience.

313.    Based on his prior professional firefighting experience, Bass was entitled to have his Starting Step increased by 2.

314.    Based on his prior professional firefighting experience, Bass's Appropriate Starting Step was Step 3

315.    The City hired Bass to work in its Fire Department on or about July 14, 2008.

316.    At the time the City implemented its reclassification, it had employed Bass for sixteen (16) full years.

317.    Throughout his employment, Bass generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

318.    During his employment, the City has not notified Bass that he failed to meet expectations.

319.    Based on his Years Meeting Expectations, Bass was entitled to have his Starting Step increased by sixteen (16).

320.    At the time the City implemented its reclassification, Bass had held his role of FD3 - Fire Truck Driver for seven (7) full years.

321.    Based on his Professional Experience in Role, Bass was entitled to have his Step further increased by three (3) to reduce wage compression.

322.    To fulfill its promises under Ordinance 2024-241, the City was due to classify Bass at the City's Maximum Step of 21.  (Appropriate Starting Step (3) + Professional Experience in Role (3) + Years Meeting Expectations (16)).

323.    Bass appealed his reclassification during the time period required by the City's appeal process.

324.    In response to his appeal, the City did not increase Bass's Step.

325.    Since his appeal, the City has not changed Bass's classification.

326.    The City currently classifies Bass as FD3 - Fire Truck Driver, Step 11

327.    FD3 - Fire Truck Driver, Step 11 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,779.70.

328.    FD3 - Fire Truck Driver, Step 21 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,558.25.

329.    As a result of the City's actions, Bass has been damaged, suffering lost wages.

330.    Bass damages are currently estimated to be growing by $778.55 on a bi-weekly basis.

### *Jeremiah Johnson*

331.    The City notified Johnson that when it implemented its reclassification on October 14, 2025, it would classify him as Step 5.

332.    When the City hired him, Johnson had no continuous paid professional firefighter experience.

333.    Based on his prior professional firefighting experience, Johnson was not entitled to have his Starting Step increased.

334.    Based on his prior professional firefighting experience, Johnson's Appropriate Starting Step was Step 1.

335.    The City hired Johnson to work in its Fire Department on or about June 3, 2019.

336.    At the time the City implemented its reclassification, it had employed Johnson for five (5) full years.

337.    Throughout his employment, Johnson generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

338.    During his employment, the City has not notified Johnson that he failed to meet expectations.

339.   Based on his Years Meeting Expectations, Johnson was entitled to have his Starting Step increased by five (5).

340.   At the time the City implemented its reclassification, Johnson had no professional experience with the City beyond his experience in FD2 - Firefighter.

341.   Based on his Professional Experience in Role, Johnson was not entitled to have his Step further increased to reduce wage compression.

342.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Johnson at Step 6.  (Appropriate Starting Step (1) + Professional Experience in Role (0) + Years Meeting Expectations (5)).

343.   Johnson appealed his reclassification during the time period required by the City's appeal process.

344.   In response to his appeal, the City did not increase Johnson's Step.

345.   Since his appeal, the City has changed Johnson's classification based on his overall performance and qualifications.

346.   The City currently classifies Johnson as FD3 - Fire Truck Driver, Step 5.

347.   FD3 - Fire Truck Driver, Step 5 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,396.92.

348.   FD3 - Fire Truck Driver, Step 6 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,456.85.

349.   As a result of the City's actions, Johnson has been damaged, suffering lost wages.

350.   Johnson damages are currently estimated to be growing by $59.93 on a bi-weekly basis.

### *Jonathan Martin*

351.   The City notified Martin that when it implemented its reclassification on October 14, 2025, it would classify him as Step 15.

352.   When the City hired him, Martin had no continuous paid professional firefighter experience.

353.   Based on his prior professional firefighting experience, Martin was not entitled to have his Starting Step increased.

354.   Based on his prior professional firefighting experience, Martin's Appropriate Starting Step was Step 1

355.   The City hired Martin to work in its Fire Department, on or about February 17, 2003.

356.   At the time the City implemented its reclassification, it had employed Martin for twenty-one (21) full years.

357.   Throughout his employment, Martin generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

358. During his employment, the City has not notified Martin that he failed to meet expectations.

359. Based on his Years Meeting Expectations, Martin was entitled to have his Starting Step increased by twenty-one (21).

360. At the time the City implemented its reclassification, Martin had held his role of FD3 - Fire Truck Driver for five (5) full years.

361. Based on his Professional Experience in Role, Martin was entitled to have his Step further increased by two (2) to reduce wage compression.

362. To fulfill its promises under Ordinance 2024-241, the City was due to classify Martin at the City's Maximum Step of 21. (Appropriate Starting Step (1) + Professional Experience in Role (2) + Years Meeting Expectations (21)).

363. Martin appealed his reclassification during the time period required by the City's appeal process.

364. In response to his appeal, the City did not increase Martin's Step.

365. Since his appeal, the City has not changed Martin's classification.

366. The City currently classifies Martin as FD3 - Fire Truck Driver, Step 15.

367. FD3 - Fire Truck Driver, Step 15 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,068.27.

368.   FD3 - Fire Truck Driver, Step 21 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,558.25.

369.   As a result of the City's actions, Martin has been damaged, suffering lost wages.

370.   Martin damages are currently estimated to be growing by $489.98 on a bi-weekly basis.

### *Jordan Fielding*

371.   The City notified Fielding that when it implemented its reclassification on October 14, 2025, it would classify him as Step 3.

372.   When the City hired him, Fielding had no continuous paid professional firefighter experience.

373.   Based on his prior professional firefighting experience, Fielding was not entitled to have his Starting Step increased.

374.   Based on his prior professional firefighting experience, Fielding's Appropriate Starting Step was Step 1

375.   The City hired Fielding to work in its Fire Department, on or about June 1, 2021.

376.   At the time the City implemented its reclassification, it had employed Fielding for three (3) full years.

377.   Throughout his employment, Fielding generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

378.   During his employment, the City has not notified Fielding that he failed to meet expectations.

379.   Based on his Years Meeting Expectations, Fielding was entitled to have his Starting Step increased by three (3).

380.   At the time the City implemented its reclassification, Fielding had no professional experience with the City beyond his experience in FD2 - Firefighter.

381.   Based on his Professional Experience in Role, Fielding was not entitled to have his Step further increased to reduce wage compression.

382.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Fielding at Step 4.  (Appropriate Starting Step (1) + Professional Experience in Role (0) + Years Meeting Expectations (3)).

383.   Fielding appealed his reclassification during the time period required by the City's appeal process.

384.   In response to his appeal, the City did not increase Fielding's Step.

385.   Since his appeal, the City has changed Fielding's classification based on his overall performance and qualifications.

386.    The City currently classifies Fielding as FD3 - Fire Truck Driver, Step 3.

387.    FD3 - Fire Truck Driver, Step 3 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,281.43.

388.    FD3 - Fire Truck Driver, Step 4 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,338.46.

389.    As a result of the City's actions, Fielding has been damaged, suffering lost wages.

390.    Fielding damages are currently estimated to be growing by $57.03 on a bi-weekly basis.

### *Joshua Bradley*

391.    The City notified Bradley that when it implemented its reclassification on October 14, 2025, it would classify him as Step 13.

392.    When the City hired him, Bradley had no continuous paid professional firefighter experience.

393.    Based on his prior professional firefighting experience, Bradley was not entitled to have his Starting Step increased.

394.    Based on his prior professional firefighting experience, Bradley's Appropriate Starting Step was Step 1

395.   The City hired Bradley to work in its Fire Department, on or about February 17, 2003.

396.   At the time the City implemented its reclassification, it had employed Bradley for twenty-one (21) full years.

397.   Throughout his employment, Bradley generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

398.   During his employment, the City has not notified Bradley that he failed to meet expectations.

399.   Based on his Years Meeting Expectations, Bradley was entitled to have his Starting Step increased by twenty-one (21).

400.   At the time the City implemented its reclassification, Bradley had held his role of FD4 - Fire Captain for nine (9) full years.

401.   Based on his Professional Experience in Role, Bradley was entitled to have his Step further increased by three (3) to reduce wage compression.

402.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Bradley at the City's Maximum Step of 21.  (Appropriate Starting Step (1) + Professional Experience in Role (3) + Years Meeting Expectations (21)).

403.   Bradley appealed his reclassification during the time period required by the City's appeal process.

404.   In response to his appeal, the City did not increase Bradley's Step.

405.   Since his appeal, the City has not changed Bradley's classification.

406.   The City currently classifies Bradley as FD4 - Fire Captain, Step 13

407.   FD4 - Fire Captain, Step 13 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,424.25.

408.   FD4 - Fire Captain, Step 21 of the Fire Department's pay scale has an estimated bi-weekly salary of $4,172.11.

409.   As a result of the City's actions, Bradley has been damaged, suffering lost wages.

410.   Bradley damages are currently estimated to be growing by $747.86 on a bi-weekly basis.

### *Kenneth Howard*

411.   The City notified Howard that when it implemented its reclassification on October 14, 2025, it would classify him as Step 7.

412.   When the City hired him, Howard had no continuous paid professional firefighter experience.

413.   Based on his prior professional firefighting experience, Howard was not entitled to have his Starting Step increased.

414.   Based on his prior professional firefighting experience, Howard's Appropriate Starting Step was Step 1

415.   The City hired Howard to work in its Fire Department, on or about August 18, 2014.

416.   At the time the City implemented its reclassification, it had employed Howard for ten (10) full years.

417.   Throughout his employment, Howard generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

418.   During his employment, the City has not notified Howard that he failed to meet expectations.

419.   Based on his Years Meeting Expectations, Howard was entitled to have his Starting Step increased by ten (10).

420.   At the time the City implemented its reclassification, Howard had held his role of FD3 - Fire Truck Driver for three (3) full years.

421.   Based on his Professional Experience in Role, Howard was entitled to have his Step further increased by one (1) to reduce wage compression.

422.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Howard at Step 12.   (Appropriate Starting Step (1) + Professional Experience in Role (1) + Years Meeting Expectations (10)).

423.   Howard appealed his reclassification during the time period required by the City's appeal process.

424. In response to his appeal, the City did not increase Howard's Step.

425. Since his appeal, the City has not changed Howard's classification.

426. The City currently classifies Howard as FD3 - Fire Truck Driver, Step 7.

427. FD3 - Fire Truck Driver, Step 7 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,518.27.

428. FD3 - Fire Truck Driver, Step 12 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,849.19.

429. As a result of the City's actions, Howard has been damaged, suffering lost wages.

430. Howard damages are currently estimated to be growing by $330.92 on a bi-weekly basis.

### *Kevin Bailey*

431. The City notified Bailey that when it implemented its reclassification on October 14, 2025, it would classify him as Step 14.

432. When the City hired him, Bailey had no continuous paid professional firefighter experience.

433. Based on his prior professional firefighting experience, Bailey was not entitled to have his Starting Step increased.

434.   Based on his prior professional firefighting experience, Bailey's Appropriate Starting Step was Step 1

435.   The City hired Bailey to work in its Fire Department, on or about February 18, 2003.

436.   At the time the City implemented its reclassification, it had employed Bailey for twenty-one (21) full years.

437.   Throughout his employment, Bailey generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

438.   During his employment, the City notified Bailey that he failed to meet expectations one (1) time.

439.   Based on his Years Meeting Expectations, Bailey was entitled to have his Starting Step increased by twenty (20).

440.   At the time the City implemented its reclassification, Bailey had held his role of FD3 - Fire Truck Driver for six (6) full years.

441.   Based on his Professional Experience in Role, Bailey was entitled to have his Step further increased by two (2) to reduce wage compression.

442.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Bailey at the City's Maximum Step of 21.  (Appropriate Starting Step (1) + Professional Experience in Role (2) + Years Meeting Expectations (20)).

443.    Bailey appealed his reclassification during the time period required by the City's appeal process.

444.    In response to his appeal, the City did not increase Bailey's Step.

445.    Since his appeal, the City has not changed Bailey's classification.

446.    The City currently classifies Bailey as FD3 - Fire Truck Driver, Step 14.

447.    FD3 - Fire Truck Driver, Step 14 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,993.43.

448.    FD3 - Fire Truck Driver, Step 21 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,558.25.

449.    As a result of the City's actions, Bailey has been damaged, suffering lost wages.

450.    Bailey damages are currently estimated to be growing by $564.82 on a bi-weekly basis.

### *Luke Hall*

451.    The City notified Hall that when it implemented its reclassification on October 14, 2025, it would classify him as Step 6.

452.    When the City hired him, Hall had no continuous paid professional firefighter experience.

453.   Based on his prior professional firefighting experience, Hall was not entitled to have his Starting Step increased.

454.   Based on his prior professional firefighting experience, Hall's Appropriate Starting Step was Step 1

455.   The City hired Hall to work in its Fire Department on or about February 18, 2018.

456.   At the time the City implemented its reclassification, it had employed Hall for six (6) full years.

457.   Throughout his employment, Hall generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

458.   During his employment, the City has not notified Hall that he failed to meet expectations.

459.   Based on his Years Meeting Expectations, Hall was entitled to have his Starting Step increased by six (6).

460.   At the time the City implemented its reclassification, Hall had held his role of FD3 - Fire Truck Driver for one (1) full year.

461.   Based on his Professional Experience in Role, Hall was not entitled to have his Step further increased to reduce wage compression.

462.  To fulfill its promises under Ordinance 2024-241, the City was due to classify Hall at Step 7.  (Appropriate Starting Step (1) + Professional Experience in Role (0) + Years Meeting Expectations (6)).

463.  Hall appealed his reclassification during the time period required by the City's appeal process.

464.  In response to his appeal, the City did not increase Hall's Step.

465.  Since his appeal, the City has not changed Hall's classification.

466.  The City currently classifies Hall as FD3 - Fire Truck Driver, Step 6

467.  FD3 - Fire Truck Driver, Step 6 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,456.85.

468.  FD3 - Fire Truck Driver, Step 7 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,518.27.

469.  As a result of the City's actions, Hall has been damaged, suffering lost wages.

470.  Hall damages are currently estimated to be growing by $61.42 on a bi-weekly basis.

*Matthew Rodgers*

471.   The City notified Rodgers that when it implemented its reclassification on October 14, 2025, it would classify him as Step 7.

472.   When the City hired him, Rodgers had no continuous paid professional firefighter experience.

473.   Based on his prior professional firefighting experience, Rodgers was not entitled to have his Starting Step increased.

474.   Based on his prior professional firefighting experience, Rodgers's Appropriate Starting Step was Step 1

475.   The City hired Rodgers to work in its Fire Department on or about April 18, 2011.

476.   At the time the City implemented its reclassification, it had employed Rodgers for thirteen (13) full years.

477.   Throughout his employment, Rodgers generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

478.   During his employment, the City has not notified Rodgers that he failed to meet expectations.

479.   Based on his Years Meeting Expectations, Rodgers was entitled to have his Starting Step increased by thirteen (13).

480.    At the time the City implemented its reclassification, Rodgers had held his role of FD4 - Fire Captain for one (1) full year.

481.    Based on his Professional Experience in Role, Rodgers was not entitled to have his Step further increased to reduce wage compression.

482.    To fulfill its promises under Ordinance 2024-241, the City was due to classify Rodgers at Step 14.   (Appropriate Starting Step (1) + Professional Experience in Role (0) + Years Meeting Expectations (13)).

483.    Rodgers appealed his reclassification during the time period required by the City's appeal process.

484.    In response to his appeal, the City did not increase Rodgers's Step.

485.    Since his appeal, the City has not changed Rodgers's classification.

486.    The City currently classifies Rodgers as FD4 - Fire Captain, Step 7

487.    FD4 - Fire Captain, Step 7 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,952.72.

488.    FD4 - Fire Captain, Step 14 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,509.85.

489.    As a result of the City's actions, Rodgers has been damaged, suffering lost wages.

490.    Rodgers damages are currently estimated to be growing by $557.13 on a bi-weekly basis.

## *Michael Sedlacek*

491.   The City notified Sedlacek that when it implemented its reclassification on October 14, 2025, it would classify him as Step 8.

492.   When the City hired him, Sedlacek had no continuous paid professional firefighter experience.

493.   Based on his prior professional firefighting experience, Sedlacek was not entitled to have his Starting Step increased.

494.   Based on his prior professional firefighting experience, Sedlacek's Appropriate Starting Step was Step 1

495.   The City hired Sedlacek to work in its Fire Department on or about April 7, 2008.

496.   At the time the City implemented its reclassification, it had employed Sedlacek for sixteen (16) full years.

497.   Throughout his employment, Sedlacek generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

498.   During his employment, the City has not notified Sedlacek that he failed to meet expectations.

499.   Based on his Years Meeting Expectations, Sedlacek was entitled to have his Starting Step increased by sixteen (16).

500.   At the time the City implemented its reclassification, Sedlacek had held his role of FD4 - Fire Captain for seven (7) full years.

501.   Based on his Professional Experience in Role, Sedlacek was entitled to have his Step further increased by three (3) to reduce wage compression.

502.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Sedlacek at Step 20.   (Appropriate Starting Step (1) + Professional Experience in Role (3) + Years Meeting Expectations (16)).

503.   Sedlacek appealed his reclassification during the time period required by the City's appeal process.

504.   In response to his appeal, the City increased Sedlacek's Step by one (1).

505.   Since his appeal, the City has not changed Sedlacek's classification.

506.   The City currently classifies Sedlacek as FD4 - Fire Captain, Step 9

507.   FD4 - Fire Captain, Step 9 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,102.20.

508.   FD4 - Fire Captain, Step 20 of the Fire Department's pay scale has an estimated bi-weekly salary of $4,070.36.

509.   As a result of the City's actions, Sedlacek has been damaged, suffering lost wages.

510.   Sedlacek damages are currently estimated to be growing by $968.16 on a bi-weekly basis.

*Mitchell Sowers*

511.   The City notified Sowers that when it implemented its reclassification on October 14, 2025, it would classify him as Step 7.

512.   When the City hired him, Sowers had no continuous paid professional firefighter experience.

513.   Based on his prior professional firefighting experience, Sowers was not entitled to have his Starting Step increased.

514.   Based on his prior professional firefighting experience, Sowers's Appropriate Starting Step was Step 1

515.   The City hired Sowers to work in its Fire Department on or about June 25, 2012.

516.   At the time the City implemented its reclassification, it had employed Sowers for twelve (12) full years.

517.   Throughout his employment, Sowers generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

518.   During his employment, the City has not notified Sowers that he failed to meet expectations.

519.   Based on his Years Meeting Expectations, Sowers was entitled to have his Starting Step increased by twelve (12).

520.   At the time the City implemented its reclassification, Sowers had held his role of FD3 - Fire Truck Driver for three (3) full years.

521.   Based on his Professional Experience in Role, Sowers was entitled to have his Step further increased by one (1) to reduce wage compression.

522.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Sowers at Step 14.  (Appropriate Starting Step (1) + Professional Experience in Role (1) + Years Meeting Expectations (12)).

523.   Sowers appealed his reclassification during the time period required by the City's appeal process.

524.   In response to his appeal, the City did not increase Sowers's Step.

525.   Since his appeal, the City has not changed Sowers's classification.

526.   The City currently classifies Sowers as FD3 - Fire Truck Driver, Step 7.

527.   FD3 - Fire Truck Driver, Step 7 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,518.27.

528.   FD3 - Fire Truck Driver, Step 14 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,993.43.

529.   As a result of the City's actions, Sowers has been damaged, suffering lost wages.

530.   Sowers damages are currently estimated to be growing by $475.16 on a bi-weekly basis.

### *Pete Mehok III*

531.   The City notified Mehok III that when it implemented its reclassification on October 14, 2025, it would classify him as Step 16.

532.   When the City hired him, Mehok III had no continuous paid professional firefighter experience.

533.   Based on his prior professional firefighting experience, Mehok III was not entitled to have his Starting Step increased.

534.   Based on his prior professional firefighting experience, Mehok III's Appropriate Starting Step was Step 1

535.   The City hired Mehok III to work in its Fire Department, on or about February 18, 2003.

536.   At the time the City implemented its reclassification, it had employed Mehok III for twenty-one (21) full years.

537.   Throughout his employment, Mehok III generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

538.   During his employment, the City has not notified Mehok III that he failed to meet expectations.

539.    Based on his Years Meeting Expectations, Mehok III was entitled to have his Starting Step increased by twenty-one (21).

540.    At the time the City implemented its reclassification, Mehok III had held his role of FD3 - Fire Truck Driver for twelve (12) full years.

541.    Based on his Professional Experience in Role, Mehok III was entitled to have his Step further increased by three (3) to reduce wage compression.

542.    To fulfill its promises under Ordinance 2024-241, the City was due to classify Mehok III at the City's Maximum Step of 21.  (Appropriate Starting Step (1) + Professional Experience in Role (3) + Years Meeting Expectations (21)).

543.    Mehok III appealed his reclassification during the time period required by the City's appeal process.

544.    In response to his appeal, the City did not increase Mehok III's Step.

545.    Since his appeal, the City has not changed Mehok III's classification.

546.    The City currently classifies Mehok III as FD3 - Fire Truck Driver, Step 16.

547.    FD3 - Fire Truck Driver, Step 16 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,144.97.

548.    FD3 - Fire Truck Driver, Step 21 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,558.25.

549.   As a result of the City's actions, Mehok III has been damaged, suffering lost wages.

550.   Mehok III damages are currently estimated to be growing by $413.28 on a bi-weekly basis.

### Peter Pucciarelli

551.   The City notified Pucciarelli that when it implemented its reclassification on October 14, 2025, it would classify him as Step 1.

552.   When the City hired him, Pucciarelli had five (5) full years of continuous paid professional firefighter experience.

553.   Based on his prior professional firefighting experience, Pucciarelli was entitled to have his Starting Step increased by 2.

554.   Based on his prior professional firefighting experience, Pucciarelli's Appropriate Starting Step was Step 3

555.   The City hired Pucciarelli to work in its Fire Department on or about January 9, 2023.

556.   At the time the City implemented its reclassification, it had employed Pucciarelli for one (1) full year.

557.   Throughout his employment, Pucciarelli generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

558.   During his employment, the City has not notified Pucciarelli that he failed to meet expectations.

559.   Based on his Years Meeting Expectations, Pucciarelli was entitled to have his Starting Step increased by one (1).

560.   At the time the City implemented its reclassification, Pucciarelli had no professional experience with the City beyond his experience in FD2 - Firefighter.

561.   Based on his Professional Experience in Role, Pucciarelli was not entitled to have his Step further increased to reduce wage compression.

562.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Pucciarelli at Step 4.   (Appropriate Starting Step (3) + Professional Experience in Role (0) + Years Meeting Expectations (1)).

563.   Pucciarelli appealed his reclassification during the time period required by the City's appeal process.

564.   In response to his appeal, the City increased Pucciarelli's Step by one (1).

565.   Since his appeal, the City has changed Pucciarelli's classification based on his overall performance and qualifications.

566.   The City currently classifies Pucciarelli as FD3 - Fire Truck Driver, Step 2.

567.   FD3 - Fire Truck Driver, Step 2 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,225.78.

568.   FD3 - Fire Truck Driver, Step 4 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,338.46.

569.   As a result of the City's actions, Pucciarelli has been damaged, suffering lost wages.

570.   Pucciarelli damages are currently estimated to be growing by $112.68 on a bi-weekly basis.

### *Richard Ennis*

571.   The City notified Ennis that when it implemented its reclassification on October 14, 2025, it would classify him as Step 9.

572.   When the City hired him, Ennis had no continuous paid professional firefighter experience.

573.   Based on his prior professional firefighting experience, Ennis was not entitled to have his Starting Step increased.

574.   Based on his prior professional firefighting experience, Ennis's Appropriate Starting Step was Step 1

575.   The City hired Ennis to work in its Fire Department, on or about May 22, 2006.

576.   At the time the City implemented its reclassification, it had employed Ennis for eighteen (18) full years.

577.   Throughout his employment, Ennis generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

578.   During his employment, the City notified Ennis that he failed to meet expectations one (1) time.

579.   Based on his Years Meeting Expectations, Ennis was entitled to have his Starting Step increased by seventeen (17).

580.   At the time the City implemented its reclassification, Ennis had held his role of FD4 - Fire Captain for six (6) full years.

581.   Based on his Professional Experience in Role, Ennis was entitled to have his Step further increased by two (2) to reduce wage compression.

582.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Ennis at Step 20.  (Appropriate Starting Step (1) + Professional Experience in Role (2) + Years Meeting Expectations (17)).

583.   Ennis appealed his reclassification during the time period required by the City's appeal process.

584.   In response to his appeal, the City did not increase Ennis's Step.

585.   Since his appeal, the City has not changed Ennis's classification.

586.   The City currently classifies Ennis as FD4 - Fire Captain, Step 9

587.   FD4 - Fire Captain, Step 9 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,102.20.

588.   FD4 - Fire Captain, Step 20 of the Fire Department's pay scale has an estimated bi-weekly salary of $4,070.36.

589.   As a result of the City's actions, Ennis has been damaged, suffering lost wages.

590.   Ennis damages are currently estimated to be growing by $968.16 on a bi-weekly basis.

### *Russ Kennington*

591.   The City notified Kennington that when it implemented its reclassification on October 14, 2025, it would classify him as Step 19.

592.   When the City hired him, Kennington had no continuous paid professional firefighter experience.

593.   Based on his prior professional firefighting experience, Kennington was not entitled to have his Starting Step increased.

594.   Based on his prior professional firefighting experience, Kennington's Appropriate Starting Step was Step 1

595.   The City hired Kennington to work in its Fire Department on or about November 22, 2000.

596.   At the time the City implemented its reclassification, it had employed Kennington for twenty-three (23) full years.

597.   Throughout his employment, Kennington generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

598.   During his employment, the City has not notified Kennington that he failed to meet expectations.

599.   Based on his Years Meeting Expectations, Kennington was entitled to have his Starting Step increased by twenty-three (23).

600.   At the time the City implemented its reclassification, Kennington had held his role of FD4 - Fire Captain for seventeen (17) full years.

601.   Based on his Professional Experience in Role, Kennington was entitled to have his Step further increased by three (3) to reduce wage compression.

602.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Kennington at the City's Maximum Step of 21.  (Appropriate Starting Step (1) + Professional Experience in Role (3) + Years Meeting Expectations (23)).

603.   Kennington appealed his reclassification during the time period required by the City's appeal process.

604.   In response to his appeal, the City increased Kennington's Step by one (1).

605. Since his appeal, the City has not changed Kennington's classification.

606. The City currently classifies Kennington as FD4 - Fire Captain, Step 20

607. FD4 - Fire Captain, Step 20 of the Fire Department's pay scale has an estimated bi-weekly salary of $4,070.36.

608. FD4 - Fire Captain, Step 21 of the Fire Department's pay scale has an estimated bi-weekly salary of $4,172.11.

609. As a result of the City's actions, Kennington has been damaged, suffering lost wages.

610. Kennington damages are currently estimated to be growing by $101.75 on a bi-weekly basis.

### *Scott Adams*

611. The City notified Adams that when it implemented its reclassification on October 14, 2025, it would classify him as Step 12.

612. When the City hired him, Adams had two (2) full years of continuous paid professional firefighter experience.

613. Based on his prior professional firefighting experience, Adams was not entitled to have his Starting Step increased.

614. Based on his prior professional firefighting experience, Adams's Appropriate Starting Step was Step 1.

615.    The City hired Adams to work in its Fire Department on or about June 19, 2006.

616.    At the time the City implemented its reclassification, it had employed Adams for eighteen (18) full years.

617.    Throughout his employment, Adams generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

618.    During his employment, the City has not notified Adams that he failed to meet expectations.

619.    Based on his Years Meeting Expectations, Adams was entitled to have his Starting Step increased by eighteen (18).

620.    At the time the City implemented its reclassification, Adams had held his role of FD4 - Fire Captain for eleven (11) full years.

621.    Based on his Professional Experience in Role, Adams was entitled to have his Step further increased by three (3) to reduce wage compression.

622.    To fulfill its promises under Ordinance 2024-241, the City was due to classify Adams at the City's Maximum Step of 21.  (Appropriate Starting Step (1) + Professional Experience in Role (3) + Years Meeting Expectations (18)).

623.    Adams appealed his reclassification during the time period required by the City's appeal process.

624.   In response to his appeal, the City increased Adams's Step by one (1).

625.   Since his appeal, the City has not changed Adams's classification.

626.   The City currently classifies Adams as FD4 - Fire Captain, Step 13

627.   FD4 - Fire Captain, Step 13 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,424.25.

628.   FD4 - Fire Captain, Step 21 of the Fire Department's pay scale has an estimated bi-weekly salary of $4,172.11.

629.   As a result of the City's actions, Adams has been damaged, suffering lost wages.

630.   Adams damages are currently estimated to be growing by $747.86 on a bi-weekly basis.

### *Stephen Long*

631.   The City notified Long that when it implemented its reclassification on October 14, 2025, it would classify him as Step 7.

632.   When the City hired him, Long had no continuous paid professional firefighter experience.

633.   Based on his prior professional firefighting experience, Long was not entitled to have his Starting Step increased.

634.   Based on his prior professional firefighting experience, Long's Appropriate Starting Step was Step 1.

635.   The City hired Long to work in its Fire Department on or about August 18, 2014.

636.   At the time the City implemented its reclassification, it had employed Long for ten (10) full years.

637.   Throughout his employment, Long generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

638.   During his employment, the City has not notified Long that he failed to meet expectations.

639.   Based on his Years Meeting Expectations, Long was entitled to have his Starting Step increased by ten (10).

640.   At the time the City implemented its reclassification, Long had held his role of FD3 - Fire Truck Driver for three (3) full years.

641.   Based on his Professional Experience in Role, Long was entitled to have his Step further increased by one (1) to reduce wage compression.

642.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Long at Step 12.  (Appropriate Starting Step (1) + Professional Experience in Role (1) + Years Meeting Expectations (10)).

643.   Long appealed his reclassification during the time period required by the City's appeal process.

644.   In response to his appeal, the City did not increase Long's Step.

645.   Since his appeal, the City has changed Long's classification based on his overall performance and qualifications.

646.   The City currently classifies Long as FD4 - Fire Captain, Step 7

647.   FD4 - Fire Captain, Step 7 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,952.72.

648.   FD4 - Fire Captain, Step 12 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,340.73.

649.   As a result of the City's actions, Long has been damaged, suffering lost wages.

650.   Long damages are currently estimated to be growing by $388.01 on a bi-weekly basis.

### Steven Chop

651.   The City notified Chop that when it implemented its reclassification on October 14, 2025, it would classify him as Step 7.

652.   When the City hired him, Chop had four (4) full years of continuous paid professional firefighter experience.

653.   Based on his prior professional firefighting experience, Chop was entitled to have his Starting Step increased by 1.

654.    Based on his prior professional firefighting experience, Chop's Appropriate Starting Step was Step 2.

655.    The City hired Chop to work in its Fire Department on or about January 30, 2017.

656.    At the time the City implemented its reclassification, it had employed Chop for seven (7) full years.

657.    Throughout his employment, Chop generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

658.    During his employment, the City has not notified Chop that he failed to meet expectations.

659.    Based on his Years Meeting Expectations, Chop was entitled to have his Starting Step increased by seven (7).

660.    At the time the City implemented its reclassification, Chop had held his role of FD4 - Fire Captain for less than (1) full year.

661.    Based on his Professional Experience in Role, Chop was not entitled to have his Step further increased to reduce wage compression.

662.    To fulfill its promises under Ordinance 2024-241, the City was due to classify Chop at Step 9.  (Appropriate Starting Step (2) + Professional Experience in Role (0) + Years Meeting Expectations (7)).

663.   Chop appealed his reclassification during the time period required by the City's appeal process.

664.   In response to his appeal, the City did not increase Chop's Step.

665.   Since his appeal, the City has not changed Chop's classification.

666.   The City currently classifies Chop as FD4 - Fire Captain, Step 7

667.   FD4 - Fire Captain, Step 7 of the Fire Department's pay scale has an estimated bi-weekly salary of $2,952.72.

668.   FD4 - Fire Captain, Step 9 of the Fire Department's pay scale has an estimated bi-weekly salary of $3,102.20.

669.   As a result of the City's actions, Chop has been damaged, suffering lost wages.

670.   Chop damages are currently estimated to be growing by $149.48 on a bi-weekly basis.

### *Steven Perry*

671.   The City notified Perry that when it implemented its reclassification on October 14, 2025, it would classify him as Step 17.

672.   When the City hired him, Perry had two (2) full years of continuous paid professional firefighter experience.

673.   Based on his prior professional firefighting experience, Perry was not entitled to have his Starting Step increased.

674.   Based on his prior professional firefighting experience, Perry's Appropriate Starting Step was Step 1

675.   The City hired Perry to work in its Fire Department on or about November 20, 2000.

676.   At the time the City implemented its reclassification, it had employed Perry for twenty-three (23) full years.

677.   Throughout his employment, Perry generally met and exceeded the City's performance expectations, which it certified in annual Performance Evaluations.

678.   During his employment, the City has not notified Perry that he failed to meet expectations.

679.   Based on his Years Meeting Expectations, Perry was entitled to have his Starting Step increased by twenty-three (23).

680.   At the time the City implemented its reclassification, Perry had held his role of FD5 - Fire Battalion Chief for fourteen (14) full years.

681.   Based on his Professional Experience in Role, Perry was entitled to have his Step further increased by three (3) to reduce wage compression.

682.   To fulfill its promises under Ordinance 2024-241, the City was due to classify Perry at the City's Maximum Step of 21.  (Appropriate Starting Step (1) + Professional Experience in Role (3) + Years Meeting Expectations (23)).

683.   Perry appealed his reclassification during the time period required by the City's appeal process.

684.   In response to his appeal, the City did not increase Perry's Step.

685.   Since his appeal, the City has not changed Perry's classification.

686.   The City currently classifies Perry as FD5 - Fire Battalion Chief, Step 17

687.   FD5 - Fire Battalion Chief, Step 17 of the Fire Department's pay scale has an estimated bi-weekly salary of $4,339.92.

688.   FD5 - Fire Battalion Chief, Step 21 of the Fire Department's pay scale has an estimated bi-weekly salary of $4,790.46.

689.   As a result of the City's actions, Perry has been damaged, suffering lost wages.

690.   Perry damages are currently estimated to be growing by $450.54 on a bi-weekly basis.

## V.    COUNT TWO – Breach of Contract (Violations of City of Madison Ordinance 2024-241)

691.   Plaintiffs hereby incorporate by reference each of the allegations contained in paragraphs 1 through 690 above.

692.   On September 9, 2024, the City adopted Ordinance 2024-241.

693.   On October 14, 2024, Ordinance 2024-241 became effective.

694.    Ordinance 2024-241 incorporated an amended version of Section 12 of the City's Personnel Policies and Procedures.

695.    Ordinance 2024-241 incorporated a formal appeal process between the Plaintiffs and the City.

696.    On December 9, 2024, the City implemented a new pay plan for the Fire Department, which is currently in effect.  (Exhibit 1).

697.    By adopting Ordinance 2024-241 and implementing the December 2024 pay plan, the City altered the traditional employment-at-will doctrine and created a contractual obligation to compensate the Plaintiffs in a manner consistent with Ordinance 2024-241, including Attachments A & B, and the December 2024 pay plan.[4]

698.    When the City implemented Exhibit 1, and reclassified the Plaintiffs, it failed to classify them pursuant to Ordinance 2024-241, as described in Count One of this Complaint.

699.    When the Plaintiffs appealed their termination, the City failed to follow the formal appeal process outlined by Ordinance 2024-241.

---

[4] *See Hoffman-LaRoche, Inc. v. Campbell*, 512 So.2d 725 (Ala. 1987)(recognizing that terms in an employee handbook can form the basis of a contract).  *See Camp v. City of Pelham*, 625 Fed. Appx. 422 (N.D. AL 2015)(recognizing an employee's right to be compensated in a comparable manner consistent with non-emergency employees based on a Civil Service Law that the City of Pelham adopted).

700.    As a result of the City's breach of contract, the Plaintiffs have been damages, suffering a loss of wages as described in Count One of this Complaint.

## VI.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray for the following relief:

A.    Grant Plaintiffs a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys, and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of City of Madison Ordinance 2024-241;

B.    Enter an Order requiring the Defendant to make Plaintiffs whole by awarding back pay and reclassifying their Step in a manner consistent with City of Madison Ordinance 2024-241;

C.    Attorneys' fees and costs; and,

D.    Any different or additional relief as may be determined by the Court to which Plaintiffs are entitled.

_____
Allen D. Arnold

_____
Whitney Morgan Brown

**OF COUNSEL:**

ALLEN D, ARNOLD, LLC
6 Office Park Circle, Suite 209
Birmingham, AL 35223
T: (205) 252-1550
F: (205) 469-7163
ada@allenarnoldlaw.com
whitney@allenarnoldlaw.com

## PLAINTIFFS REQUESTS TRIAL BY STRUCK JURY

_____
                                    OF COUNSEL

**DEFENDANT'S ADDRESS:**
The City of Madison
c/o City Clerk: Lisa Thomas
100 Hughes Road
Madison, Alabama 35758